## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Heraeus Medical GmbH,

      Plaintiff,

      v.

Esschem, Inc.,

      Defendant.

Civil Action No.

## COMPLAINT

## INTRODUCTION

1.      Heraeus Medical GmbH ("Heraeus") brings this civil action against Esschem, Inc. ("Esschem") because Esschem developed and is producing and selling products that utilize Heraeus' trade secrets. Heraeus specializes in the production and development of bone cement. Esschem is a manufacturer and distributer of acrylic polymers and monomers that are components of bone cements, among other things. In particular, Esschem produces and sells copolymers known as R262 and R263, both of which are used to make bone cements that directly compete with Heraeus' bone cements. R262 and R263 were developed using Heraeus' misappropriated trade secrets. Following U.S. discovery actions in this Court against Esschem (Rufe, J.) and in another federal district court against Esschem's business partner, Biomet, the Frankfurt, Germany Court of Appeals has found that this information constitutes Heraeus' trade secrets and enjoined the defendants from manufacturing, offering, or distributing or having manufactured, offered, and/or distributed any bone cement products developed using the trade secrets misappropriated from Heraeus including those that incorporate the Esschem copolymers

R262 and/or R263. By this action, Heraeus seeks to ensure that Esschem, too, is barred from (and compensates Heraeus for) illegally enjoying the benefits of Heraeus' intellectual property.

2.    Heraeus Medical GmbH, successor-in-interest to Heraeus Kulzer GmbH, ("Heraeus") for its complaint against Defendant Esschem, Inc. ("Esschem") states as follows:

## THE PARTIES

3.    Heraeus is a German company with its principal place of business at Wehrheim, Germany. Heraeus specializes in the production and development of bone cement.

4.    Esschem is a Pennsylvania corporation. Esschem maintains a principal place of business at 4000 Columbia Avenue, Linwood, Pennsylvania 19061. Esschem is a manufacturer and distributor of acrylic polymers and monomers that are sold primarily in the medical field and cosmetics industry.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, as Heraeus and Esschem are citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.    Venue is appropriate in this judicial district under 28 U.S.C. § 1391 because Esschem resides and maintains its principal place of business in this district and a substantial part of the events giving rise to the claims occurred within this judicial district.

## FACTUAL BACKGROUND

### Heraeus Confidential Information And Trade Secrets

7.    Bone cement has many uses in the medical field and is used extensively in hip and knee joint endoprosthetics.

8.     Heraeus first began developing bone cements in the early 1940s when one of its researchers, Dr. Diener, had the idea of developing a bone cement by modifying a special plastic used in dentistry.

9.     For almost two decades, Heraeus spent considerable time, effort, and money in the research and development of its proprietary formulations, specifications, and methods for making and testing bone cements and their raw components (collectively, "Heraeus Confidential Information and Trade Secrets").

10.     The Heraeus Confidential Information and Trade Secrets are highly confidential and competitively sensitive information and specific know-how that are essential to the successful manufacture of bone cement products.

11.     The Heraeus Confidential Information and Trade Secrets include the overall specifications for the particular combination and quantity of ingredients in the bone cement, as well as the specific formulations and particular combinations of polymers, specifications for copolymers, and other ingredients, such as chlorophyll and zirconium.

12.     Specifically, the Heraeus Confidential Information and Trade Secrets include:  (1) specifications for the raw materials in the composition, including optimal characteristics of each raw material, that have been identified by Heraeus after years of testing and experimentation, *e.g.*, water content, particle size distribution, inherent viscosity, and BPO content of the copolymers; (2) specific test protocols developed by Heraeus to insure compliance with these specifications during manufacturing and overall quality of the final product; and (3) mixing protocols that, again, were developed over the years by Heraeus.

13.     In 1959, Heraeus introduced its Palacos® bone cement to the market.  Palacos® has been on the market for more than 50 years with a well documented history of successful

applications in hip and knee endoprosthetics, as confirmed by numerous studies and independent sources.

14.     In 2005, Heraeus' direct competitor, Biomet Inc. ("Biomet") launched a line of bone cements that directly compete with Heraeus' Palacos® bone cements and related products.

15.     Biomet made its competing bone cements using Heraeus Confidential Information and Trade Secrets.

16.     Prior to the introduction of Biomet's competing products that used Heraeus Confidential Information and Trade Secrets, Heraeus was the leading producer of bone cement products.

17.     Prior to the introduction of Biomet's competing products that used Heraeus Confidential Information and Trade Secrets, Heraeus' products were considered the gold standard.

18.     Until 2005, none of Heraeus' competitors had been able to offer a competitive alternative that met the handling characteristics and quality of Heraeus' highly successful bone cements.

19.     Since the introduction of competing products into the market by those who misappropriated Heraeus Confidential Information and Trade Secrets, Heraeus has suffered a dramatic loss of approximately 50 percent of its market share.

20.     Heraeus' proprietary formulations and methods for making and testing bone cements were not generally known to the public prior to their development by Heraeus.

21.     Heraeus has taken steps to limit disclosure and dissemination of the Heraeus Confidential Information and Trade Secrets within the company.  Only those employees who need to know the Heraeus Confidential Information and Trade Secrets to perform their job duties

can access it. Employees are obligated to keep the Heraeus Confidential Information and Trade Secrets confidential, and their obligations continue following termination of employment with Heraeus.

22.     Heraeus has also taken reasonable measures to protect the secrecy of its formulas and methods such that they remain generally not known to the public. For example, individuals entering and leaving Heraeus' facilities are subject to random inspections. Heraeus has entered into confidentiality agreements with its distributors to ensure that Heraeus Confidential Information and Trade Secrets are not improperly disclosed. Heraeus has sought court protection in litigation to prevent improper disclosure of the Heraeus Confidential Information and Trade Secrets. Further, Heraeus has been careful to disclose only so much of the Heraeus Confidential Information and Trade Secrets as absolutely necessary to obtain regulatory approvals, to distribute its bone cements, and to enforce its legal rights.

23.     Heraeus' proprietary formulations and methods for making bone cements provide Heraeus with a competitive business advantage, for example by enabling Heraeus to sell a premium product that was the gold standard in the industry until the Heraeus Confidential Information and Trade Secrets were misappropriated. The misappropriation has allowed competitors to make and sell competing products that have stolen Heraeus' market share and dominant position.

24.     Heraeus' proprietary formulations and methods for making bone cement products represent valuable trade secrets.

### Heraeus' Relationship With Merck

25.     In 1972, Heraeus contracted with Merck KGaA ("Merck") for the distribution of its bone cement products.

26.     Under that distribution agreement and as required by law, Heraeus gave Merck the Heraeus Confidential Information and Trade Secrets, a comprehensive set of documents about the composition of its bone cement products as well as the know-how required for testing and producing bone cement products to enable Merck to obtain and maintain regulatory approval for the bone cement products identified in that contract.  The documents contained detailed information about the Heraeus Confidential Information and Trade Secrets.  Over the years, Heraeus updated this documentation as necessary and provided copies of it to Merck.

27.     Heraeus gave the Heraeus Confidential Information and Trade Secrets to Merck for the sole purpose of registering the Palacos® products with the appropriate regulatory bodies in the United States and numerous countries worldwide.

28.     Merck was obligated by the terms of its contracts with Heraeus to use the Heraeus Confidential Information and Trade Secrets solely for the purpose of effecting such regulatory registration.

29.     These contracts further obligated Merck to protect the Heraeus Confidential Information and Trade Secrets from disclosure to any other third parties unless it first obtained Heraeus' written consent.

30.     In addition to Merck's confidentiality obligations under the distribution agreement, Merck was also subject to an additional set of obligations from a research and development ("R&D") project to combine a new bone cement to be developed by Heraeus for use in a special vacuum application system called VacPac that was developed by Biomet.  The VacPac project was governed by the terms of the R&D cooperation agreement between Heraeus and Merck.

31.     Merck and Heraeus continued their longstanding business relationship for many years.

32.     In 1997, however, Merck entered into a joint venture with Biomet, an orthopaedics company with its world headquarters located in Indiana.  The joint venture will be referred to herein as "the Biomet/Merck Joint Venture."

33.     Biomet, Biomet Orthopedics LLC (formerly known as Biomet Orthopedics, Inc.) ("Biomet Orthopedics"), Biomet Europe B.V. ("Biomet Europe"), and certain of its European subsidiaries, including without limitation Biomet Deutschland GmbH ("Biomet Deutschland") and Biomet Orthopedics Switzerland GmbH ("Biomet Switzerland") (collectively, the "Biomet Group") are competitors of Heraeus.

34.     When Heraeus learned of the Biomet/Merck Joint Venture, it was very concerned about the possible flow of the Heraeus Confidential Information and Trade Secrets to the Biomet Group because Heraeus and the Biomet Group are direct competitors.

35.     However, because Merck was contractually obligated not to disclose the Heraeus Confidential Information and Trade Secrets to the Biomet Group, Heraeus agreed to supply the Heraeus bone cement products to the Biomet/Merck Joint Venture on a non-exclusive basis.

**The Biomet Group Bought Merck's Shares In The Joint Venture**

36.     In the Spring of 2004, Merck sold its joint venture shares to the Biomet Group without informing Heraeus prior to the sale.  This sale transferred all of Merck's interest in the distribution of Heraeus' bone cement products to the Biomet Group.

37.     Prior to the sale, in violation of Merck's obligations to Heraeus, Merck did not seek Heraeus' consent to disclose the Heraeus Confidential Information and Trade Secrets to the Biomet Group.

38.     Heraeus did not consent to the disclosure of the Heraeus Confidential Information and Trade Secrets to the Biomet Group.

39.     Heraeus refused to continue supplying its bone cement products to the former Biomet/Merck Joint Venture, now solely owned by the Biomet Group.

40.     Heraeus created its own distribution entity in Europe in Autumn 2004 and informed the Biomet Group in February 2005 that Heraeus would cease delivery of its bone cement products to them after August 31, 2005.

41.     Shortly after receiving Heraeus' notice, Biomet Switzerland sued Heraeus seeking to compel Heraeus to continue supplying it with bone cement products.

42.     During those proceedings, Biomet Switzerland produced a declaration of its witness, Dr. Rainer Specht, who testified that Heraeus should be required to continue to supply bone cement products because there were no alternative products in the market.  Dr. Specht further testified that because the Biomet Group did not have the necessary know-how, it would take a considerable amount of time and effort to develop independently an alternative line of products.  Indeed, Dr. Specht estimated that it might take at least two years before alternative products would be available.

43.     Only a few months after Dr. Specht so testified, however, Biomet Switzerland announced that it had succeeded in producing comparable bone cements and it was dropping the lawsuit.

### The Biomet Group Gained Access To The Heraeus Confidential Information And Trade Secrets Through Former Merck Employee, Dr. Rainer Specht

44.     Dr. Specht worked for Merck before the creation of the Biomet/Merck Joint Venture.  Pursuant to the relationship between Merck and Heraeus, Dr. Specht was provided access to the Heraeus Confidential Information and Trade Secrets including Heraeus' trade

secrets and protocols. Dr. Specht and Merck's access to the Heraeus Confidential Information and Trade Secrets was governed by confidentiality obligations and restrictions on use.

45.     Dr. Specht was aware that he was in possession of Heraeus Confidential Information and Trade Secrets belonging to Heraeus, which he acknowledged in correspondence with another Biomet employee, Daniel Smith.

46.     Once the Biomet Group obtained full ownership of the joint venture's business, Dr. Specht became an employee of the Biomet Group.

**The Biomet Group Used The Heraeus Confidential Information And Trade Secrets To Guide Esschem's Making Of Copolymers For The Biomet Group's Competing Bone Cements**

47.     At about the same time as Merck's sale of its shares in the Biomet/Merck Joint Venture, the Biomet Group determined that it may need to develop its own bone cements, presumably because it understood that Heraeus would not continue to supply Palacos® bone cements to the Biomet Group once it learned of Merck's sale of its joint venture shares to the Biomet Group.

48.     In early 2004, the Biomet Group contacted Esschem for assistance in producing certain copolymers that would be used by the Biomet Group to develop a line of bone cements to compete with Heraeus' Palacos® bone cement.

49.     During the course of the development process, Biomet was a direct participant in Esschem's development. The Biomet Group continuously advised Esschem and analyzed the results of Esschem's development by comparing them with Heraeus' confidential specifications.

50.     The Biomet Group passed the Heraeus Confidential Information and Trade Secrets to Esschem. On information and belief, Esschem was aware that Biomet possessed Heraeus Confidential information and Trade Secrets and that it would be improper for Biomet to provide that information to Esschem. Nevertheless, Esschem later received from Biomet the

same Confidential Information and Trade Secrets that it knew should not have been disclosed to Esschem.

51.     Notwithstanding that no competitor had previously been able to replicate Heraeus' bone cement products, toward the end of August 2005, the Biomet Group began introducing these products in Europe.

52.     The Biomet Group's line of bone cement products (collectively, "European bone cements") paralleled Heraeus' product line.

| Heraeus Products | Biomet Products |
|---|---|
| Refobacin® Palacos® R | Refobacin® Bone Cement R |
| Palacos® R | Biomet Bone Cement R |
| Palamed® G | Refobacin® Plus Bone Cement |
| Palamed® | Biomet Plus Bone Cement |
| Copal® | Refobacin® Revision |
| Osteopal® G | Refobacin® Bone Cement LV |
| Osteopal® V | Biomet Bone Cement V |

53.     The European bone cements were developed by the Biomet Group and Esschem by using the stolen Heraeus Confidential Information and Trade Secrets.

54.     Biomet Deutschland claimed that its new products were identical to Heraeus' products with respect to chemical identity, molecular weight, and particle size distribution of the copolymers, as well as of the composition of the powder component and the monomer.

### Heraeus Suspected That Its Confidential Information And Trade Secrets Had Been Misappropriated

55.     The Biomet Group's sudden ability to accomplish what Heraeus' competitors had failed to do for decades was surprising to Heraeus.  Heraeus learned that the registration files containing its confidential information had been transferred from Merck to the Biomet Group, causing Heraeus to suspect that the Heraeus Confidential Information and Trade Secrets had

been misappropriated by the Biomet Group. On further investigation, Heraeus uncovered additional evidence to support its suspicions.

56.     Heraeus acquired samples of the Biomet Group's products and analyzed them. This analysis revealed that the Biomet Group's products in many aspects were virtually identical to the Heraeus products. Minor discrepancies, however, were found during application of the products. These discrepancies aligned exactly with details that Heraeus had never provided to Merck.

57.     In another expert analysis, the German Plastics Institute (Deutsches Kunststoffinstitut) ruled out the possibility that the analyzed products could have been lawfully reproduced by means of reverse engineering.

58.     In addition, because Heraeus believed that the Biomet Group did not have the capacity to make a suitable equivalent for the copolymers that are used in the Heraeus bone cement, it sought to discover the source of these raw materials (*e.g.*, the polymers and copolymers) used in the Biomet products.

59.     In another legal proceeding, a witness for Biomet Austria GmbH testified that the Biomet Group had hired Coripharm as a "contract manufacturer." Coripharm later was renamed aap Biomaterials GmbH, a subsidiary of aap Implantante AG ("aap Implantante").

60.     Heraeus' investigations at that time revealed that raw materials for bone cement products bearing Esschem's name and address were delivered to aap Implantate, the Biomet Group's contract manufacturer in Germany.

### Heraeus Sued In Germany To Redress The Misappropriation

61.     On December 30, 2008, Heraeus sued certain affiliates and employees of the Biomet Group (collectively, the "Biomet Defendants") for trade secret misappropriation in the District Court Darmstadt in Germany, Case No. 3 O 493/08.

62.     To discover evidence to support its claims in Germany, Heraeus brought two actions in the United States pursuant to 28 U.S.C. § 1782 ("Section 1782") to obtain discovery in aid of foreign litigation.  The Section 1782 cases were filed in January, 2009.

63.     The first Section 1782 action sought discovery from Biomet and Biomet Orthopedics in Indiana.  *Heraeus v. Biomet*, Civil Action No. 3:09-cv-00530-RLM-CAN (N.D. Ind.).  The second Section 1782 action sought discovery from Esschem in Pennsylvania. *Heraeus v. Esschem*, Misc. Action No. 09-mc-00017 (CMR) (E.D. Pa.).

64.     Litigation of Heraeus' trade secret misappropriation claims in Germany and requests for discovery assistance in the United States has been extremely protracted.

65.     Heraeus' requests for Section 1782 discovery assistance were litigated for many months before the requests were allowed, and Heraeus was able to obtain evidence to support its claims in Germany.  *See Heraeus v. Esschem*, 390 F. App'x 88 (3d Cir. 2010); *Heraeus v. Biomet*, 633 F.3d 591 (7th Cir. 2011).

66.     In Germany, the case was delayed many times.  In the Darmstadt court, one of the presiding judges suffered a serious illness that delayed the case.  In addition, the Darmstadt court stayed the case for several months while Biomet, Biomet Orthopedics, and Esschem produced the discovery that Heraeus had requested under Section 1782.

67.     On December 20, 2012, the Darmstadt court rendered its first instance determination and declined to hold the Biomet Defendants liable for misappropriating the Heraeus Confidential Information and Trade Secrets.

68.     Heraeus appealed that decision to the Frankfurt Court of Appeals ("the Frankfurt Court").  On June 5, 2014, the Frankfurt Court entered judgment in Heraeus' favor.

69.     The Frankfurt Court found—as Heraeus has contended all along—that the Biomet Defendants misappropriated Heraeus Confidential Information and Trade Secrets and used them to guide Esschem in replicating the copolymers that the Biomet Group uses in its European bone cements.

70.     The Frankfurt Court enjoined the Biomet Defendants from manufacturing, offering, or distributing or having manufactured, offered, and/or distributed any bone cements using the Heraeus Confidential Information and Trade Secrets misappropriated from Heraeus including those that incorporate the "copolymers Esschem R262 and/or R263."

71.     Further, the Frankfurt Court held the Biomet Defendants liable for damages to compensate Heraeus for the harm suffered as a result of the Biomet Defendants' misconduct.

### The Frankfurt Court Held That The Biomet Defendants Misappropriated Heraeus Confidential Information And Trade Secrets And Used Them To Guide Esschem In Developing The Copycat Copolymers

72.     In its decision, the Frankfurt Court identified three technical specifications that are Heraeus trade secrets.[1]

73.     The Frankfurt Court explained that to develop a competing line of bone cements, the Biomet Defendants "had to find a suitable equivalent for the copolymers that are used in [Heraeus'] bone cement (Plex 6612 and 6613)."

74.     The Frankfurt Court found that Dr. Specht and Mr. Smith approached Esschem to assist them in developing the copycat copolymers.

75.     The Frankfurt Court further found that Dr. Specht and Dan Smith recognized the three technical specifications were not to be used by the Biomet Defendants.

---

[1] Pursuant to German law, the Judgment of the Frankfrut Court is not available to the public. On September 5, 2014, outside counsel for Esschem received a copy of the Frankfurt Court's Judgment on an outside counsel's eyes only basis and thus is already aware of the specific trade secrets detailed in that Judgment. If necessary, Heraeus will amend this complaint to recite further details once a Protective Order is entered.

76.     The Frankfurt Court concluded that the written communications introduced into evidence showed that Dr. Specht and Mr. Smith "continuously accompanied and advised Esschem in the course of its development work, which continued for several months.  Because they were aware of the specification for the 'original' copolymers, [Dr. Specht] and Dan Smith also knew precisely which direction this development should ideally go.  ... [They] also utilised this knowledge of the 'ideal' specification at least for putting Esschem 'on the right path.'"

77.     The Frankfurt Court further inferred that Dr. Specht and Mr. Smith communicated extensively with Esschem during this time period:  "General experience of business life will allow the assumption that the parties also contacted each other by telephone, in which other suggestions going in the same direction will also have been mentioned."

78.     The Frankfurt Court emphasized that Dr. Specht disclosed specific parameters from Heraeus' specifications.  This was exactly the same information that Esschem had requested early in the process, but was told that the information could not be provided.

79.     The Frankfurt Court also concluded that Dr. Specht possessed the secret specifications for the chlorophyll and zirconium dioxide used in Heraeus' bone cements.

80.     While the Biomet Defendants claimed that they had independently determined to use the same chlorophyll composition as used in the Heraeus bone cement, the Frankfurt Court rejected that contention:  "Common experience will exclude the possibility of the defendants deciding precisely to purchase [chlorophyll having the secret composition] from this supplier had they not had this key information."

81.     Further, as to the use of zirconium dioxide, the Frankfurt Court explained that"[t]he decisive point is the – not generally accessible – knowledge that precisely this zirconium dioxide product is particularly suitable for bone cement."  Dr. Specht "disclosed this

source of supply to Esschem ….   There is no evidence to suggest that Esschem would also otherwise have chosen this supplier."

### Esschem Knew Or Should Have Known That The Information Supplied By The Biomet Group Should Not Have Been Disclosed To Esschem

82.   According to Esschem's website, "Esschem, the most trusted source for high-grade acrylics for dental, cosmetic, and biomedical applications has a 30-year record of accomplishment as well in the production of polymer substrates and monomers for bone cement systems."

83.   Esschem, the Biomet Group, and Heraeus are active participants in the bone cement market.  Esschem makes copolymers for bone cement manufacturers, like the Biomet Group and Heraeus.  It competes with other copolymer manufacturers to provide copolymers to bone cement manufacturers.

84.   Esschem was aware that the Biomet Group and Heraeus are competitors.

85.   As a company involved in the production of copolymers, Esschem was aware of the confidential nature of the formulations and methods of manufacture of copolymers, including for bone cements and in particular, Heraeus' bone cement products.

86.   Esschem maintains the confidentiality of its own production methods, processes, and raw materials.  They are not publicly available.

87.   Indeed, Esschem stridently attempted to block Heraeus from obtaining Section 1782 discovery, claiming that the requested discovery would require the disclosure of Esschem's trade secrets.

88.   Esschem was aware that Heraeus had at one time supplied the bone cements that were distributed by the Biomet/Merck Joint Venture.

89.     Esschem was aware that Heraeus created its own distribution entity in Europe and terminated its relationship with the Biomet Group.

90.     Esschem was aware of litigation in which Biomet Switzerland attempted to compel Heraeus to supply Biomet Switzerland with it with bone cement products.

91.     Esschem was aware that there were no alternative products available in the marketplace for Heraeus' bone cement products prior to aiding the Biomet Group in introducing such products in August 2005.

92.     Esschem struggled for more than year to try to produce the requested copolymers according to the Biomet Group's specifications.

93.     The Biomet Group continuously advised Esschem throughout the development process.

94.     The Biomet Group's outpouring of specific details and the manner in which these details were communicated to Esschem should have alerted Esschem that it was receiving confidential information and information that the Biomet Group had not obtained properly.

95.     Disregarding these suspicious circumstances, Esschem continued to develop and then supply R262 and R263 copolymers to the Biomet Group, its agents, and/or affiliates, knowing that these copolymers would be used by the Biomet Group to make bone cements that directly compete with Heraeus' bone cement products.

96.     No later than January 2009, Esschem knew that the R262 and R263 copolymers were derived using Heraeus Confidential Information and Trade Secrets when it was served with Heraeus' petition for Section 1782 discovery assistance.  In that petition, Heraeus showed that the Heraeus Confidential Information and Trade Secrets had been misappropriated by the Biomet Group and had been used to direct Esschem's efforts to develop the copycat copolymers.

97.    Disregarding that the development of R262 and R263 was the product of the misappropriated Heraeus Confidential Information and Trade Secrets, Esschem continued to produce and supply R262 and R263 copolymers to the Biomet Group, its agents, and/or affiliates, knowing that these copolymers would be used by the Biomet Group to make bone cements that directly compete with Heraeus' bone cement products.

98.    Esschem knew when it received notice of the Frankfurt Court's June 5, 2014 Judgment, if not sooner, that that the R262 and R263 copolymers were derived using Heraeus Confidential Information and Trade Secrets.

99.    Notwithstanding this knowledge, Esschem has continued to produce and supply R262 and R263 copolymers to the Biomet Group, its agents, and/or affiliates, knowing that these copolymers would be used by the Biomet Group to make bone cements that directly compete with Heraeus' bone cement products.

100.    Further, on information and belief, Esschem has produced and supplied R262 and R263 copolymers to at least one other manufacturer of bone cements, which makes and sells bone cements that directly compete with Heraeus' bone cement products.

101.    Esschem benefited from and continues to benefit from the misappropriation of Heraeus Confidential Information and Trade Secrets.  Esschem was and continues to be unjustly enriched by its use of Heraeus Confidential Information and Trade Secrets.

### COUNT I
### MISAPPROPRIATION OF TRADE SECRETS UNDER THE PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### (12 PA.C.S. § 5301, ET SEQ.)

102.    Heraeus incorporates by reference paragraphs 1 through 101 as though fully set forth herein.

103.    Heraeus has developed valuable trade secrets relating to formulations and methods for making and testing bone cements that derive economic value from not being generally known to others who might use or disclose them for economic gain.  The Heraeus Confidential Information and Trade Secrets were not previously known or used in the bone cement industry before Heraeus introduced Palacos® bone cements to the market in 1959.

104.    Heraeus invested significant time, effort, resources, and money in developing its formulations and methods for making and testing bone cements.  It spent nearly two decades creating the first Palacos® bone cement.

105.    Heraeus' trade secrets provide Heraeus a competitive advantage in the marketplace.

106.    Heraeus' trade secrets could not easily be duplicated and they derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from their disclosure or use.  For decades, no other bone cement manufacturer was able to provide a bone cement that could replicate the performance of Heraeus' gold standard bone cement products.

107.    Heraeus' confidential and trade secret formulations and methods for making and testing bone cements are not available to others through publicly available sources, and are critical to Heraeus in the conduct of its business, thereby entitling Heraeus to the use and enjoyment of such trade secrets.

108.    Heraeus has developed and maintains strict measures to maintain the secrecy of these trade secrets.

109.    Heraeus has taken all reasonable measures to protect the Heraeus Confidential Information and Trade Secrets.

110.    Esschem improperly obtained and used Heraeus' trade secrets.

111.    Esschem received information from the Biomet Group in connection with the development of the R262 and R263 copolymers. Esschem knew or should have known that the information it received from the Biomet Group belonged to Heraeus.

112.    The circumstances and the manner in which the Biomet Group directed Esschem's development efforts gave Esschem actual and/or constructive notice that the information provided did not belong to Biomet and imposed a duty on Esschem to inquire about the source of the information provided by the Biomet Group.

113.    Esschem breached its duty to inquire and kept itself willfully blind to the source of the information provided by the Biomet Group. Had Esschem inquired with reasonable intelligence and diligence, the Biomet Group would have had to disclose that the information belonged to Heraeus.

114.    Esschem knew or should have known that the formulations and methods it improperly obtained, disclosed and sought to replicate were Heraeus' trade secrets and could not have been properly obtained from anyone other than Heraeus.

115.    Esschem did not have Heraeus' consent to obtain, use, disclose or replicate these trade secrets.

116.    Esschem knew or should have known that it did not have Heraeus' consent to obtain, use, disclose or replicate these trade secrets.

117.    By virtue of Esschem's misappropriation of Heraeus' trade secrets, Heraeus is threatened with immediate, ongoing, and irreparable harm.

118.    Esschem's conduct has been willful and outrageous and undertaken with reckless indifference to the rights of Heraeus.

119.    Esschem's conduct is a direct and proximate cause of Heraeus' damages.

120.    As a direct and proximate consequence of the foregoing, Heraeus has also suffered irreparable injury, including but not limited to the loss of market share, client confidence, goodwill, and business reputation.  Unless enjoined as requested herein, Heraeus will continue to suffer irreparable injury as a result of Esschem's unlawful activities.

## COUNT II
## CONSPIRACY TO MISAPPROPRIATE A TRADE SECRET

121.    Heraeus incorporates by reference paragraphs 1 through 120 as though fully set forth herein.

122.    Esschem's conduct set forth above establishes a civil conspiracy among Esschem and the Biomet Group to develop and manufacture bone cement products using the Heraeus Confidential Information and Trade Secrets, such that the Biomet bone cements wrongfully compete with Heraeus' bone cement products.

123.    The conspiracy has, at all times, involved a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by an unlawful means or for an unlawful purpose.

124.    Esschem, in combination with the Biomet Group, worked to misappropriate Heraeus' trade secrets.  The actions of this combination of Esschem and the Biomet Group, including the overt actions set forth in Paragraphs 1 through 104 above, were taken in pursuance and furtherance of the conspiracy's common purpose to develop and manufacture bone cement products by unlawful means that unlawfully compete with Heraeus' bone cement products.

125.    Esschem conspired with Biomet to develop the copolymers R262 and R263 using the misappropriated Heraeus Confidential Information and Trade Secrets.  Esschem disregarded the suspicious circumstances under which the Biomet Group provided help and direction during

the development of R262 and R263. Esschem continued to develop and supply R262 and R263 polymers to the Biomet Group.

126.    Then, Esschem received actual notice from Heraeus in 2009 that Biomet had misappropriated Heraeus Confidential Information and Trade Secrets, but yet disregarded that notice and continued to produce and supply R262 and R263 to the Biomet Group.

127.    Then, Esschem learned in July 2014, that the Frankfurt Court had found members of the Biomet Group liable for trade secret misappropriation and enjoined the Biomet Group from making and selling bone cements incorporating the R262 and R263 copolymers. Yet, Esschem disregarded that notice and continued to produce and supply R262 and R263 to the Biomet Group.

128.    Further, Esschem has conspired with the Biomet Group to provide R262 and R263 to the Biomet Group through alternate channels and Biomet affiliates to assist the Biomet Group in attempting to avoid the reach of the Frankfurt Court injunction and/or to impede Heraeus' ability to enforce the injunction.

129.    Heraeus has suffered, and will continue to suffer, substantial and irreparable damage as a result of the Esschem's conspiracy and tortious conduct.

130.    Esschem's actions are a direct and proximate cause of Heraeus' damages.

## COUNT III
## UNJUST ENRICHMENT

131.    Heraeus incorporates by reference paragraphs 1 through 130 as though fully set forth herein.

132.    As described above, Esschem used the Heraeus Confidential Information and Trade Secrets misappropriated by the Biomet Group, and, by so doing, avoided legitimate costs of researching and developing its own products.

133.    Esschem unjustly received the benefit of Heraeus' substantial investment in the research and development of Heraeus Confidential Information and Trade Secrets, and avoided the expense, effort, and uncertain results inherent in an independent development of competing products.

134.    Esschem has been unjustly enriched at Heraeus' expense by its use of Heraeus Confidential Information and Trade Secrets.  By creating a copycat product, Esschem and Biomet have piggy-backed on the longstanding reputation and associated good will earned by Heraeus as a result of its creation of exceptional bone cement products.

135.    Accordingly, Heraeus is entitled to damages in the amount by which Esschem has been unjustly enriched at Heraeus' expense.

**COUNT IV**
**UNFAIR COMPETITION**

136.    Heraeus incorporates by reference paragraphs 1 through 135 as though fully set forth herein.

137.    By virtue of the acts described above, Esschem has appropriated and used Heraeus Confidential Information and Trade Secrets that were misappropriated by Biomet, and has employed unfair and deceptive practices that interfere with Heraeus' ability to fairly compete.

138.    Use of Heraeus Confidential Information and Trade Secrets gives Esschem and those to whom Esschem supplies copolymers an unfair and wrongful competitive advantage and compromises Heraeus' legitimate competitive advantage.

139.    Esschem has committed these acts maliciously and intentionally, inflicting harm on Heraeus and/or benefitting itself at the expense of Heraeus.

140.   As a direct and proximate result of Esschem's unfair competition, Heraeus has suffered substantial damages.

141.   Esschem's actions have been willful and outrageous and undertaken with reckless indifference to the rights and interests of Heraeus.

## COUNT V
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE

142.   Heraeus incorporates by reference paragraphs 1 through 141 as though fully set forth herein.

143.   As described above, Heraeus has developed valuable trade secrets, proprietary information and confidential information—Heraeus Confidential Information and Trade Secrets—which provide Heraeus with an advantage over its competitors.

144.   Heraeus had a reasonable expectation of economic advantage, which is the rightly consequence of its significant investment and labor in developing its gold standard bone cements.  That economic advantage has been lost as a result of Esschem's improper and malicious interference through its misappropriation of Heraeus Confidential Information and Trade Secrets.

145.   As a direct and proximate result of Esschem's interference, Heraeus has suffered substantial damages.

146.   Esschem's actions have been willful and outrageous and undertaken with reckless indifference to the rights and interests of Heraeus.

## COUNT VI
## CONVERSION

147.   Heraeus incorporates by reference paragraphs 1 through 146 as though fully set forth herein.

148.    As described above, Heraeus has developed valuable Heraeus Confidential Information and Trade Secrets which provide Heraeus with an advantage over its competitors.

149.    Heraeus communicated the Heraeus Confidential Information and Trade Secrets to Merck in confidence.

150.    Merck, in violation of its agreement with Heraeus, communicated Heraeus Confidential Information and Trade Secrets to the Biomet Group, which in turn communicated them to Esschem.

151.    Esschem has used and continues to use Heraeus Confidential Information and Trade Secrets to produce and supply polymers and copolymers to the Biomet Group and others for use in manufacturing completing bone cements that directly compete with Heraeus' bone cement products.

152.    As a direct and proximate result of Esschem's conversion of Heraeus' intellectual property, Heraeus has suffered substantial damages.

153.    Esschem's actions have been willful and outrageous and undertaken with reckless indifference to the rights and interests of Heraeus.

### JURY DEMAND

154.    Heraeus demands a trial by jury as to all claims that may be tried to a jury.

### PRAYER FOR RELIEF

WHEREFORE, Heraeus requests the following relief:

a)    That Esschem, *and any person or entity working in concert with it*, be enjoined, preliminarily until the hearing, and thereafter permanently, from using or retaining any Heraeus Confidential Information and Trade Secrets;

b)      That Esschem be directed to immediately return to Heraeus all company property, as well as all copies of the Heraeus' documents, electronic files, and information in its possession, custody or control;

c)      That Esschem be ordered to promptly produce copies of any such Heraeus documents, electronic files, and information in its possession, custody or control during the expedited discovery process related to Plaintiff's Motion for Preliminary Injunction;

d)      That Esschem be precluded from competing unlawfully with Heraeus or disclosing Heraeus Confidential Information and Trade Secrets;

e)      That Esschem be ordered to disgorge all economic benefit obtained from producing and selling copolymers developed using Heraeus Confidential Information and Trade Secrets.

f)      That Heraeus be awarded actual, compensatory, and punitive damages, prejudgment and post-judgment interest, reasonable attorneys' fees, costs, including, but not limited to, all costs of the investigation into Esschem's unlawful actions; and exemplary damages; and

g)      That Heraeus be awarded such other and further necessary and proper relief as the Court may deem just and proper.

September 8, 2014

Samuel W. Silver
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
Phone:  (215) 751-2309
Fax:     (215) 751-2205

Lawrence D. Rosenberg (Pa. Bar No. 67414)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
Phone:  (202) 879-3939
Fax:      (202) 626-1700

Susan M. Gerber (Ohio Bar No. 0070945)
JONES DAY
North Point, 901 Lakeside Avenue
Cleveland, OH 44114
Phone:  (216) 586-3939
Fax:      (216) 579-0212

Attorneys for Plaintiff
Heraeus Medical GmbH