# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HERAEUS MEDICAL GMBH,**         :<br>    Plaintiff,          :<br>                      :<br>   v.                 :<br>                      :<br>**ESSCHEM, INC.,**           :<br>    Defendant.          : | CIVIL ACTION NO. 14-5169 |

## MEMORANDUM OPINION

**Rufe, J.**                                          **January 25, 2018**

  Plaintiff Heraeus Medical GmbH, a German company specializing in the production of bone cements, alleges that Defendant Esschem, Inc. worked in concert with Respondent Biomet, Inc. in misappropriating Heraeus' trade secrets to produce competing bone cements for Biomet. Heraeus learned of Biomet's alleged misappropriation in August of 2005, when the competing bone cements were launched into the marketplace. By 2009 at the latest, Heraeus possessed evidence revealing that Esschem was allegedly assisting Biomet in misappropriating Heraeus' trade secrets by supplying critical copolymers used to create the competing bone cements.

  More than five years later, on September 8, 2014, Heraeus filed a complaint against Esschem. Esschem now moves for summary judgment, arguing that all of Heraeus' claims are time barred by the applicable statutes of limitations. For reasons that follow, the Court will grant the motion.

  **I.**   **BACKGROUND**

  Unless otherwise noted, the following facts are undisputed. Heraeus Medical GmbH is a developer and producer of bone cements used in joint replacement surgery. After dominating the bone cement market for nearly fifty years, Heraeus started losing its market share in 2005, when Biomet began selling competing bone cement products that were virtually identical to Heraeus'

products in chemical identity, molecular weight, particle size distribution, and other characteristics. An account detailing how Biomet allegedly began selling these similar products follows.

In 1959, Heraeus introduced a successful bone cement line called Palacos to the market. In 1972, it entered into a distribution agreement with Merck to expand its market share, whereby Heraeus would provide its trade secrets to Merck so that Merck could obtain regulatory approval for the products and distribute them in the United States and elsewhere. Merck was required to protect Heraeus' trade secrets under the terms of the agreement.

More than twenty years later, in 1997, Merck entered into a joint venture with Biomet. Heraeus initially agreed to supply bone cement products to the Merck/Biomet joint venture. However, in the spring of 2004, Merck sold its interest in the joint venture to Biomet, without informing Heraeus. This sale transferred Merck's interest in its distribution agreement with Heraeus to Biomet. Specifically, Biomet obtained Heraeus' trade secrets from the sale, without Heraeus' consent. After learning of the sale to Biomet, in February of 2005, Heraeus advised Biomet that it would stop supplying its bone cement products to the joint venture as of August 31, 2005.

However, by that point, Biomet had contracted with Defendant Esschem, a Pennsylvania company specializing in the creation of copolymers used in medical products, to produce certain copolymers needed to manufacture its own bone cements. It is alleged that Biomet provided Heraeus' trade secrets to Esschem to make these copolymers. With Biomet's guidance, Esschem developed copolymers R262 and R263, which are used in Biomet's bone cements.

By August of 2005, Biomet was able to introduce a line of bone cements that directly competed with Heraeus' products. At this time, Heraeus suspected that its trade secrets had been

misappropriated, and conducted an investigation. Heraeus tested samples of Biomet's bone cements, confirming that they were virtually identical to those Heraeus sold, except for minor variations. Its investigation also "revealed that raw materials for bone cement products bearing Esschem's name and address were delivered to . . . [Biomet's] contract manufacturer in Germany."[1]

On December 30, 2008, Heraeus filed suit against Biomet in Germany, alleging that Biomet's bone cement products were developed using trade secrets misappropriated from Heraeus.[2] Heraeus reaffirmed its knowledge that Esschem was supplying the copolymers to Biomet during the action in Germany, noting in its briefing that Biomet provided Heraeus' trade secrets to Esschem in an effort to procure copolymers R262 and R263 from Esschem to use in its competing bone cements.[3]

Heraeus has sued Biomet in courts throughout Europe. As part of its litigation strategy against Biomet, on January 29, 2009, Heraeus brought a discovery action pursuant to 28 U.S.C. § 1782 against Esschem in this Court. According to Heraeus, the purpose of the discovery action was to support its claims in the action before the German court. This Court initially quashed the

---

[1] Compl. at ¶ 60.

[2] On June 5, 2014, the Frankfurt Court of Appeals in Germany reversed a ruling of the lower court and entered judgment in favor of Heraeus, finding that Biomet used three technical specifications which were Heraeus' trade secrets, and which Biomet knew were trade secrets, to guide Esschem in developing copolymers for use in Biomet's bone cement. The court enjoined Biomet from manufacturing, offering, or distributing bone cement products which use Heraeus' trade secrets, including those containing Esschem's copolymers R262 and R263. Heraeus alleges that, despite the German court order, Biomet continues to buy R262 and R263 from Esschem and to sell bone cement developed using Heraeus' trade secrets outside of Germany. Both parties have appealed the ruling of the Frankfurt Court of Appeals.

[3] In a brief Heraeus submitted in the German Action on October 28, 2009, Heraeus wrote: "It is therefore proven that [Biomet] . . . has direct access to [Heraeus'] industrial secrets with respect to the precise specifications and margins of the copolymers used by [Heraeus], as [Biomet] knew them and passed them on to Esschem." Mot. for Summ. J. on Statutes of Limitations, Ex. 5 at 19 (translated from German to English). Additionally, in a brief submitted on July 30, 2010 to the German court, Heraeus noted that Biomet "makes every effort to prevent [Heraeus from] prov[ing] that [Heraeus'] trade secrets from CE certification documents were used by Esschem when selecting and producing the co-polymers." *Id.*, Ex. 6 at 25.

3

application for discovery on September 11, 2009,[4] and Heraeus appealed to the United States Court of Appeals for the Third Circuit. During the appeal, Heraeus continued to assert that Biomet misappropriated Heraeus' trade secrets by disclosing them to Esschem. For example, Heraeus wrote in the Court of Appeals that it believed "that one or more members of the Biomet Group instructed Esschem to manufacture these raw materials using Heraeus' highly confidential information and trade secrets."[5] On May 11, 2010, during oral argument before the Third Circuit, counsel for Heraeus explained:

> Esschem is the central character because in order to prove trade secret[] [mis]appropriation in Germany, Heraeus is going to need to show that those trade secrets were in Esschem's file. Esschem is the party that's manufacturing the two key components of the bone cements. If Esschem doesn't have the trade secrets, it's going to be impossible to show that the trade secrets were used inappropriately, and thus the German action would not be able to be fully successful. . . . Because they need the Esschem evidence, and the Esschem evidence would very likely show which Biomet entity gave it to them, which provide the link in the chain of custody to Biomet.[6]

On July 28, 2010, the Third Circuit vacated this Court's ruling with instructions to grant discovery on an expedited basis.[7] Following this directive, Esschem produced documents and other discovery for several months.[8] During the discovery period, Heraeus represented to the Court that it possessed evidence linking Esschem to the misappropriation of its trade secrets. For instance, at a hearing held on July 21, 2011, counsel for Heraeus explained:

> I will represent as [an] officer of the court that [Heraeus'] German counsel, including Dr. Klinkert believes that with the information that we have from

---

[4] *In re Heraeus Kulzer GmbH,* No. 09-mc-17, 2009 WL 2981921, at *1 (E.D. Pa. Sept. 11, 2009).

[5] Mot. for Summ. J. on Statutes of Limitations, Ex. 14 at 9.

[6] *Id.*, Ex. 16 at 7-8.

[7] *Heraeus Kulzer GmbH v. Esschem, Inc.*, 390 F. App'x 88 (3d Cir. 2010). In its decision, the Third Circuit noted that the landscape of the litigation had changed, and that as of the time of the oral argument, it appeared that Heraeus would no longer be able to obtain discovery elsewhere.

[8] For example, a November 10, 2010 declaration of Dr. Klinkert stated that "[o]utside counsel for Heraeus has reviewed the documents produced by Esschem so far and found evidence in those documents that support Heraeus' misappropriation claim under German law." Mot. for Summ. J. on Statutes of Limitations, Ex. 12 at ¶ 3.

4

> Esschem, combined with the information that we have [from] Biomet, that he has a very strong case, a trade secret[] [mis]appropriation [case] in Germany, but without that evidence, it's going to be awful hard for them, so it's really important evidence.[9]

Counsel continued by stating: "it's the specific ones in the Esschem production combined with the ones in the Biomet production that really support the case strongly in Germany,"[10] and that "[t]hey are confident that if you combine the material we have from Esschem with the material from Biomet, that he has a compelling case in Germany."[11] Discovery concluded in this § 1782 proceeding on August 19, 2011.[12] On September 8, 2014, Heraeus filed the present lawsuit alleging Esschem worked with Biomet in misappropriating Heraeus' trade secrets to create the competing bone cements, and asserting claims under Pennsylvania law for: (1) misappropriation of trade secrets, (2) conspiracy to misappropriate trade secrets, (3) unjust enrichment, (4) unfair competition, (5) tortious interference with economic advantage, and (6) conversion.

## II.  STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if the "materials in the record" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] Summary judgment may be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit

---

[9] Mot. for Summ. J. on Statutes of Limitations, Ex. 21 at 21.

[10] *Id.*, Ex. 21 at 41.

[11] *Id.*, Ex. 21 at 44. In addition, during this time period, Heraeus continued to represent to the German court that it had evidence of Esschem's participation in the misappropriation. For example, by February 11, 2011, Heraeus "had reviewed the documents produced by Esschem and found evidence in those documents that supports Heraeus' misappropriation claim under German law," and that "the evidence that Heraeus has already discovered from Esschem is critical to Heraeus' case." *See id.*, Ex. 18 at 10, 12-13.

[12] Heraeus contends that its discovery into whether Esschem misappropriated its trade secrets continued until December 2011, when it completed discovery in a similar § 1782 discovery action against Esschem that it had filed in Indiana.

[13] Fed. R. Civ. P. 56(a), (c)(1)(A).

5

a reasonable jury to find for the nonmoving party."[14] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[15] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[16]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[17] Further, a court may not weigh the evidence or make credibility determinations.[18] Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[19] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[20] This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[21] Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[22]

---

[14] *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

[15] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16] *Id.*

[17] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[18] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[20] *Anderson*, 477 U.S. at 249-50 (citations omitted).

[21] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[22] *Celotex*, 477 U.S. at 322; *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987).

### III. DISCUSSION

#### A. THE MISAPPROPRIATION OF TRADE SECRETS CLAIMS ARE TIME BARRED

Heraeus raises a misappropriation of trade secrets claim and a conspiracy to misappropriate trade secrets claim against Esschem. A party misappropriates a trade secret when it "acquires knowledge of another's trade secret in circumstances giving rise to a duty to maintain its confidentiality and then discloses or uses that trade secret without the other's consent."[23] Misappropriation of trade secrets claims brought under the Pennsylvania Uniform Trade Secrets Act ("PUTSA") are governed by a three-year statute of limitations.[24] The three-year statute of limitations begins to run when "the misappropriation was discovered or by the exercise of reasonable diligence should have been discovered."[25]

The three-year statute of limitations in PUTSA incorporates the "discovery rule," which is an exception to the general rule that a claim accrues at the time the alleged wrongful act was committed.[26] In other words, the "discovery rule" dictates that the statute of limitations will not begin to run until the plaintiff knew, or should reasonably have known, that he had been injured and that his injury was caused by another party's conduct.[27]

---

[23] *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 110 (3d Cir. 2010) (citing 12 Pa. Cons. Stat. Ann. § 5302).

[24] 12 Pa. Cons. Stat. Ann. § 5307.

[25] *Id.*

[26] *See* 1-A Trade Secrets: Law and Practice [18] (2014) ("The Pennsylvania UTSA provides the standard three-year statute of limitations subject to the discovery rule.") (citing 12 Pa. Const. Stat. Ann. § 5307).

[27] *See Danysh v. Eli Lilly and Co.*, 461 F. App'x 75, 77 (3d Cir. 2012) (explaining that in the context of fraud, negligence, breach of warranty, and failure to warn claims, which are subject to the discovery rule, "the limitations period commences upon the plaintiff's 'actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause'") (quoting *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011)); s*ee also Highland Tank & Mfg. Co. v. PS Int'l, Inc.*, 393 F. Supp. 2d 348, 354 (W.D. Pa. 2005) (stating that under the discovery rule, a plaintiff has a certain number of years under the applicable statute of limitations "to bring a claim from the date [the] plaintiff knew or reasonably should have known that the plaintiff has been injured and that this injury was caused by the conduct of the other party") (citation omitted).

Under the discovery rule, a claim accrues "upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong."[28] Pennsylvania takes a narrow approach to the discovery rule, and allows it to toll the limitations period only "during the plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence."[29] "The application of the rule requires that the plaintiff use all reasonable diligence to inform himself or herself properly of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period."[30]

Heraeus' misappropriation of trade secrets claims are premised on the allegation that Biomet gained access to Heraeus' trade secrets and disclosed them to Esschem to create the competing bone cements that were introduced to the market in August of 2005. However, Heraeus waited until September 8, 2014 to bring its misappropriation claims against Esschem. Pursuant to PUTSA's three-year statute of limitations, in order for Heraeus' misappropriation claims to be actionable, the Court would have to find that the claims did not accrue until after September 8, 2011. To so conclude would be contrary to the evidence that Heraeus knew, or reasonably should have known, of the facts upon which its misappropriation claims are based years before September 8, 2011.

Heraeus' admissions in the German litigation and the § 1782 discovery action demonstrate that there is no genuine issue of material fact that its misappropriation claims are time barred because Heraeus knew, or reasonably should have known, of the factual basis for the misappropriation claims well before September 8, 2011. In fact, the Court concludes that

---

[28] *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994). "If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights." 12 Pa. Const. Stat. Ann. § 5307, uniform law cmt.

[29] *Blanyar v. Genova Prods., Inc.*, 861 F.3d 426, 431-32 (3d Cir. 2017) (internal quotation marks and citations omitted).

[30] *Id.* at 432 (internal quotation marks and citations omitted).

8

Heraeus knew, or reasonably should have known, of the facts supporting its misappropriation claims by January 29, 2009 at the very latest.

First, in August of 2005, Heraeus reasonably suspected that Biomet had misappropriated its trade secrets once Biomet had introduced its competing products into the market. Shortly thereafter, Heraeus conducted an investigation and discovered that Esschem was providing the raw materials that were essential in creating the competing bone cements. By Heraeus' own admission, the investigation "revealed that raw materials for bone cement products bearing Esschem's name and address were delivered to . . . [Biomet's] contract manufacturer in Germany."[31] At that point, Heraeus had objectively reasonable notice that Biomet was receiving raw materials from Esschem, and that Esschem was assisting Biomet in creating the competing bone cements. Heraeus therefore knew, or reasonably should have known, that it had been injured and that the injury was caused by Biomet and Esschem's conduct.

Second, by December 30, 2008, Heraeus filed suit against Biomet in Germany, alleging that Biomet misappropriated its trade secrets. During the German litigation, Heraeus confirmed that it knew Esschem was supplying copolymers to Biomet, and explained its theory that Biomet had disclosed its trade secrets to Esschem to create the copolymers. In briefing from the German action, Heraeus wrote that Biomet "has direct access to [Heraeus'] industrial secrets with respect to the precise specifications and margins of the copolymers used by [Heraeus], as [Biomet] knew them and passed them to Esschem."[32] Thus, by the time Heraeus filed suit against Biomet in Germany on December 30, 2008, it knew, or through reasonable diligence should have known, of the factual basis for its misappropriation claims against Esschem.

---

[31] Compl. at ¶ 60.

[32] Mot. for Summ. J. on Statutes of Limitations, Ex. 5 at 19 (translated from German to English).

9

Third, on January 29, 2009, Heraeus brought a § 1782 discovery action against Esschem in this Court to support its claims against Biomet in the German action. Heraeus brought this discovery action because it believed that Biomet had misappropriated its trade secrets by disclosing them to Esschem. During this § 1782 action, Heraeus admitted that it believed "that one or more members of the Biomet Group instructed Esschem to manufacture these raw materials using Heraeus' highly confidential information and trade secrets."[33] By January 29, 2009, therefore, Heraeus knew of the factual basis for its misappropriation claims against Esschem. The Court concludes that, at the very latest, the statute of limitations began to accrue on January 29, 2009. Thus, to assert a timely claim under PUTSA's three-year statute of limitations, Heraeus would have had to file its misappropriation claims against Esschem by January 29, 2012. Heraeus, however, failed to bring its misappropriation claims by this deadline. Instead, it waited an additional two years, and did not file its misappropriation claims until September 8, 2014. This delay in filing its misappropriation claims cannot be excused by the discovery rule, because there is no genuine dispute that Heraeus knew, or reasonably should have known, of the factual basis for its misappropriation claims by 2009 at the very latest.

Heraeus contends that it not only needed the discovery in the § 1782 action before this Court, but also needed discovery that it sought in a § 1782 action it filed against Esschem in Indiana, in order to bring its misappropriation claims against Esschem. This argument is unpersuasive. Heraeus knew that it had been injured, but rather than follow Pennsylvania's approach to the discovery rule, it now seeks to apply a knowledge standard in which a party could effectively toll the statute of limitations until it receives all the evidence it needs to prove its claims. Such a "discovery first, claim second" standard would significantly undermine the

---

[33] *Id.*, Ex. 14 at 9.

10

discovery rule, and "would require an insufficient degree of diligence on the part of the potential claimant."[34] Heraeus cannot avoid PUTSA's three-year statute of limitations when it knew, or reasonably should have known, of the factual basis for its claims by 2009, but failed to exercise due diligence in asserting its misappropriation claims against Esschem within the appropriate time period.[35]

Heraeus also contends that its misappropriation claims are not time barred because each use of its allegedly misappropriated trade secrets is an actionable wrong under PUTSA. Under the "separate accrual" or "continuing wrong" approach for determining when a claim for trade secret misappropriation accrues, the statute of limitations runs separately from each act of misappropriation.[36] Heraeus contends that each sale of products Esschem makes using Heraeus' trade secrets, which were allegedly misappropriated in 2005, constitutes an actionable tort with a separate accrual date for statute of limitations purposes.[37] However, Pennsylvania courts do not hold that misappropriation of trade secrets is a "continuing tort" under PUTSA.[38] To apply the separate accrual approach in this case would nullify the discovery rule and eliminate the statute of limitations altogether. Esschem's ongoing sale of products that were allegedly developed using Heraeus' trade secrets is nothing more than a continuation of the original alleged

---

[34] *Oshiver*, 38 F.3d at 1386 (citing *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1127 (3d Cir. 1988)).

[35] In addition, Heraeus' argument is unpersuasive because it had received substantial discovery pursuant to the § 1782 actions before September 8, 2011. Heraeus has not identified any discovery received after that date as providing a basis for asserting its claims that did not previously exist.

[36] Resp. to Mot. for Summ. J. on Statutes of Limitations at 9 (citing 1-1 Milgrim on Trade Secrets § 1.01).

[37] *See id.*

[38] *See WebDiet, Inc. v. NutriSystem, Inc.*, 2016 Phila. Ct. Com. Pl. LEXIS 133, at *18 (Pa. C.P. Apr. 11, 2016). In addition, the applicable uniform law comment to § 5307 of PUTSA explains that the "Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation." *See* Pa. Cons. Stat. Ann. § 5307, uniform law comment. Moreover, Heraeus relies exclusively on case law which cites the separate accrual or continuing wrong approach to trade secret claims decided under Pennsylvania common law, not PUTSA. *See Harry Miller Corp. v. Mancuso Chemicals, Ltd.*, 469 F. Supp. 2d 303, 317 (E.D. Pa. 2007); *Frank W. Winne & Son, Inc. v. Palmer*, No. 91-2239, 1991 WL 155819, at *4 (E.D. Pa. Aug. 7, 1991); *Anaconda Co. v. Metric Tool & Die Co.*, 485 F. Supp. 410, 426 (E.D. Pa. 1980).

misappropriation that occurred in 2005. Heraeus cannot sit by for nearly a decade and then rely on the separate accrual approach to override PUTSA's three-year statute of limitations on its misappropriation claims. Therefore, Heraeus' misappropriation claims are time barred by PUTSA's three-year statute of limitations, and will be dismissed.

### B. THE REMAINING CLAIMS ARE TIME BARRED

Next, the Court must determine whether any of Heraeus' remaining claims may proceed. In addition to the misappropriation of trade secrets claims, Heraeus raised claims of unjust enrichment, unfair competition, tortious interference with economic advantage, and conversion, which rely on the same factual allegations as its misappropriation claims.

While claims of unjust enrichment are subject to a four-year statute of limitations, claims of unfair competition, tortious interference with economic advantage, and conversion are subject to a two-year statute of limitations.[39] Because these claims are based on the same facts as the misappropriation claims, Heraeus knew, or reasonably should have known, of the factual basis for these claims by January 29, 2009 at the very latest, and thus the applicable statutes of limitations began to accrue on this date. Therefore, to timely raise a claim of unjust enrichment, Heraeus would have had to file this claim by January 29, 2013, and to timely bring a claim of unfair competition, tortious interference with economic advantage, or conversion, Heraeus would have had to file these claims by January 29, 2011. Heraeus failed to assert these claims by the appropriate deadlines, and instead waited until September 8, 2014 to file its complaint. Like its misappropriation claims, Heraeus' remaining claims are barred by the applicable statutes of limitations and will be dismissed.[40]

---

[39] 42 Pa. Cons. Stat. Ann. §§ 5525(a)(4), 5524.

[40] Neither party contends that the "separate accrual" or "continuing wrong" approach applies to the unjust enrichment, unfair competition, tortious interference with economic advantage, and conversion claims. The Court is

## IV.     CONCLUSION

For the foregoing reasons, Esschem's motion for summary judgment on the applicable statutes of limitations will be granted. An appropriate order follows.

---

also not aware of precedent applying such an approach to these claims, particularly where the underlying actionable conduct giving rise to an alleged misappropriation has been time barred.